IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| Amanda Foster, on behalf of herself and similarly situated employees,<br><br>Plaintiff,<br><br>v.<br><br>New Apple, Inc., d/b/a Apple Gold Group,<br><br>Defendant. | Civil Action No. 0:16-cv-3705-BHH<br><br>**ORDER** |

In this putative collective action, Plaintiff Amanda Foster ("Plaintiff" or "Foster"), on behalf of herself and similarly situated employees of Defendant New Apple, Inc., d/b/a Apple Gold Group ("Defendant" or "Apple"), seeks relief under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201–219, for alleged minimum and overtime wage violations. This matter is before the Court upon Defendant's motion to dismiss Plaintiff's amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 13.) For the reasons stated below, the Court denies in part and grants in part Defendant's motion to dismiss.

**BACKGROUND**

Plaintiff formerly worked as a server at one of Defendant's Applebee's restaurants from August 2015 until August 2016. Defendant paid Plaintiff and other similarly situated employees an hourly rate of $2.13, below the federal minimum wage of $7.25 per hour established by 29 U.S.C. § 206(a), by claiming the "tip credit" allowed under 29 U.S.C. § 203(m). In this action, Plaintiff asserts that Defendant violated the FLSA by utilizing the tip

credit to satisfy its minimum wage obligations because Defendant required Plaintiff and other servers to spend more than 20 percent of their time performing non-tip producing work, such as washing dishes, stocking condiments, rolling silverware, and cleaning the restaurant.  (*See* ECF No. 5 ¶ 13.)  Specifically, Plaintiff estimates that she spent an average of approximately four hours each shift–with shifts ranging from ten to 12 hours–performing non-tip producing work, thereby spending approximately 33 to 40 percent of her time performing non-tip producing work.  (*Id.* ¶¶ 14-20.)  According to Plaintiff, the FLSA prohibits an employer from utilizing a tip credit to satisfy its minimum wage obligations when the employee spends more than 20 percent of her time performing non-tip producing work.  (*Id.* ¶ 27.)  In support of this allegation, Plaintiff relies on 29 C.F.R. § 531.56(e) and the so-called "20 percent rule," which appears in the United States Department of Labor's ("DOL's") Field Operations Handbook ("Handbook") and Fact Sheet #15.  (*Id.*)  In addition to her minimum wage claim, Plaintiff asserts that Defendant violated the FLSA's overtime pay requirements.  (*Id.* ¶ 28.)

In its motion to dismiss, Defendant contends that the 20 percent rule is not supported by the statute, regulations, or legislative history.  Moreover, Defendant contends that Plaintiff's theory of liability is contrary to the plain language of the FLSA.  Accordingly, Defendant requests that the Court reject the 20 percent rule and dismiss Plaintiff's minimum wage claim.  In addition, Defendant requests that the Court dismiss Plaintiff's overtime wage claim because Plaintiff's complaint lacks sufficient factual allegations to state a plausible claim.

Plaintiff filed a response in opposition to Defendant's motion (ECF No. 23) and a supplement to her response (ECF No. 27), and Defendant filed a reply (ECF No. 26).

**STANDARD OF REVIEW**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) examines the legal sufficiency of the facts alleged on the face of a plaintiff's complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when the factual content allows the court to reasonably infer that the defendant is liable for the misconduct alleged. *Id.* When considering a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

**DISCUSSION**

The FLSA establishes minimum wage and overtime pay standards for employers to follow. Pursuant to 29 U.S.C. § 203(m), an employer may pay a lower wage to an employee who performs work that is tipped by customers, i.e., a "tipped employee":

> In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to--
>
> > (1) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996; and
> >
> > (2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under section 206(a)(1) of this title.

3

> The additional amount on account of tips may not exceed the value of the tips actually received by an employee.

29 U.S.C. § 203(m). Because the cash wage identified in paragraph (1) is $2.13, and South Carolina has not raised the minimum wage above the federal level of $7.25, an employer saves $5.12 per hour in decreased wages when paying a "tipped employee." The FLSA defines "tipped employee" as "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." *Id.* § 203(t).

In interpreting the meaning of "tipped employee," the DOL has issued the following regulation:

> (e) Dual jobs. In some situations an employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter. In such a situation the employee, if he customarily and regularly receives at least $30 a month in tips for his work as a waiter, is a tipped employee only with respect to his employment as a waiter. He is employed in two occupations, and no tip credit can be taken for his hours of employment in his occupation of maintenance man. Such a situation is distinguishable from that of a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses. It is likewise distinguishable from the counterman who also prepares his own short orders or who, as part of a group of countermen, takes a turn as a short order cook for the group. Such related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips.

29 C.F.R. § 531.56(e). In addition, the DOL's Wage and Hour Division has issued four opinion letters[1] regarding § 531.56(c), has maintained the 1988 Handbook, and has issued Fact Sheet #15, all of which are explained below.

The DOL issued an opinion letter on March 28, 1980, responding to an inquiry regarding whether duties performed by tipped employees in a restaurant after closing hours

---

[1] An opinion letter is an official, written opinion by the Wage and Hour Division about how a particular law applies under specific circumstances presented by an employer, employee, or other entity requesting the opinion.

4

(such as cleaning the salad bar, placing the condiment crocks in the cooler, cleaning and stocking the waitress station, resetting the tables, and vacuuming the dining room carpet) were to be considered tipped-employee duties under the FLSA. The DOL wrote:

> [Section 531.56(e)] explains that a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses is not employed in two occupations. Further, such related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips. As indicated, however, where there is a clear dividing line between the types of duties performed by a tipped employee, such as between maintenance duties and waitress duties, no tip credit may be taken for the time spent by a waitress performing maintenance duties.

(ECF No. 13-6 at 2, Dep't of Labor, Wage & Hour Div., Op. Letter WH-502, 1980 WL 141336 (Mar. 28, 1980).)

In another opinion letter issued on December 20, 1985, the DOL considered whether salad bar and dining room set-up duties are related to a tipped occupation within the meaning of section 3(m) of the FLSA. The opinion letter provides that a tip credit can be taken when such after-hours preparatory and clean-up work are incidental to the waiter's regular duties and are assigned generally to the wait staff. The letter continues: "However, where the facts indicate that specific employees are routinely assigned to maintenance-type work or that tipped employees spend a substantial amount of time in performing general preparation work or maintenance, we would not approve a tip credit for hours spent in such activities." (ECF No. 13-7 at 4, Dep't of Labor, Wage & Hour Div., Op. Letter FLSA-854, 1985 WL 1259240 (Dec. 20, 1985).) The DOL ultimately determined that the tip credit did not apply when only one waiter was assigned to perform one-and-a-half to two hours of the preparatory duties during a five-hour shift, as that "constitutes 30% to 40% of the employee's workday." (*Id.*)

5

The DOL's 1988 Handbook recognizes and repeats § 531.56(e)'s distinction between the maintenance man who also works as a waiter and the waitress who spends part of her time performing related duties such as cleaning and setting tables. The Handbook sets forth the so-called 20 percent rule (in bold below) and states:

> Reg 531.56(e) permits the taking of the tip credit for time spent in duties related to the tipped occupation, even though such duties are not by themselves directed toward producing tips (i.e. maintenance and preparatory or closing activities). For example a waiter/waitress, who spends some time cleaning and setting table, making coffee, and occasionally washing dishes or glasses may continue to be engaged in a tipped occupation even though these duties are not tip producing, provided such duties are incidental to the regular duties of the server (waiter/waitress) and are generally assigned to the servers. **However, where the facts indicate that specific employees are routinely assigned to maintenance, or that tipped employees spend a substantial amount of time (in excess of 20 percent) performing general preparation work or maintenance, no tip credit may be taken for the time spent in such duties.**

(ECF No. 13-5 at 2, Dep't of Labor, Wage & Hour Div. Handbook § 30d00(e) (Dec. 9, 1988) (emphasis added).)

The DOL describes the Handbook as "an operations manual that provides Wage and Hour Division (WHD) investigators and staff with interpretations of statutory provisions, procedures for conducting investigations, and general administrative guidance." Field Operations Handbook, U.S. Dep't of Labor, https://www.dol.gov/whd/FOH/ (last visited August 2, 2017). The DOL further states that the Handbook "reflects policies established through changes in legislation, regulations, significant court decisions, and the decisions and opinions of the WHD Administrator," but that "[i]t is not used as a device for establishing interpretative policy." *Id.*

On January 15, 2009, more than 20 years after setting forth the 20 percent rule in

6

the Handbook, the DOL issued another opinion letter, considering whether a bartender's assistant, or "barback," who received his tips from tip pools with the bartenders under whom they served, is a tipped employee. (ECF No. 13-10 at 4, Dep't of Labor, Wage & Hour Div., Op. Letter FLSA 2009-12, 2009 WL 649014 (Jan. 15, 2009)). Without mentioning the 20 percent rule, the DOL determined that a barback qualifies as a tipped employee within the meaning of sections 3(m) and 3(t) of the FLSA, noting that this determination was consistent with the legislative history of the Act, "which included employees who do not receive tips directly from customers, such as busboys and service bartenders, within the categories of employees who were eligible to participate in a tip pool because they 'customarily and regularly' received tips, whether through tip pools or tip sharing arrangements with other employees." (*Id.*)

On January 16, 2009, under the guidance of an interim administrator, the DOL issued another opinion letter in response to a request to clarify the Handbook's interpretation of "tipped employee." (ECF No. 13-8, U.S. Dep't of Labor, Wage & Hour Div. Op. Letter FLSA2009-23 (Jan. 16, 2009).) In that letter, the DOL cited conflicting cases addressing the 20 percent rule and rejected the 20 percent rule by stating that the DOL does "not intend to place a limitation on the amount of duties related to a tip-producing occupation that may be performed, so long as they are performed contemporaneously with direct customer-service duties and all other requirements of the Act are met." (*Id.*) Importantly, however, the DOL never sent this opinion letter, and it was formally withdrawn for further consideration by a subsequent opinion letter dated March 2, 2009. (ECF No. 13-9, Dep't of Labor, Wage & Hour Div. Withdrawal Letter ,2009 WL 649026 (March 2, 2009).)

Next, in Fact Sheet #15, which was last revised in December 2016, the DOL provides general information concerning the application of the FLSA to tipped employees, including the following explanation of how the rules apply to employees who perform dual jobs:

> When an employee is employed by one employer in both a tipped and a non-tipped occupation, such as an employee employed both as a maintenance person and a waitperson, the tip credit is available only for the hours spent by the employee in the tipped occupation. The FLSA permits an employer to take the tip credit for some time that the tipped employee spends in duties related to the tipped occupation, even though such duties are not by themselves directed toward producing tips. For example, a waitperson who spends some time cleaning and setting tables, making coffee, and occasionally washing dishes or glasses is considered to be engaged in a tipped occupation even though these duties are not tip producing. **However, where a tipped employee spends a substantial amount of time (in excess of 20 percent in the workweek) performing related duties, no tip credit may be taken for the time spent in such duties.**

(ECF No. 23-2 at 3, https://www.dol.gov/whd/regs/compliance/whdfs15.pdf (last visited Aug. 2, 2017) (emphasis added).) Fact Sheet #15 also advises that it "is for general information and is not to be considered in the same light as official statements of position contained in the regulations." (*Id.* at 5.)

**I.      Defendant's Motion to Dismiss**

    **A.      Plaintiff's Minimum Wage Claim**

In its motion to dismiss, Defendant asserts that Plaintiff's minimum wage claim fails to allege a violation of the statutory text of the FLSA's tip credit provision because Plaintiff admits that she (1) was employed in a single occupation as a server and that she earned (2) $2.13 an hour plus (3) more than $30 per month in tips; according to Defendant, that is all that the statutory text requires. In other words, Defendant asserts that nothing in the

statutory text or the legislative history suggests that the tip credit provision's applicability depends on the percentage of allegedly tip-generating duties an employee performs. Moreover, Defendant points out that Plaintiff does not allege that she was employed in dual jobs. Overall, Defendant asserts that the 20 percent rule is not entitled to deference because the two documents where the rule is found both state that they are not official documents used to establish policy. In addition, Defendant asserts that the 20 percent rule is not entitled to deference because it is not consistent with the statute and regulations, and because the DOL's position with regard to its application has been inconsistent. Defendant contends that the 20 percent rule is infeasible and urges the Court to follow other courts that have rejected the rule, citing, *inter alia*, a number of cases from the District of Arizona and an Eleventh Circuit decision. *See, e.g., Kirchgessner v. CHLN, Inc.*, 174 F. Supp. 3d 1121 (D. Ariz. 2016); *Montijo v. Romulus Inc.*, No. cv-14-264, 2015 WL 1470128 (D. Ariz. Mar. 30, 2015); *Richardson v. Mt. Range Rests. LLC*, No. CV-14-1370, 2015 WL 1279237 (D. Ariz. Mar. 19, 2015); *Schaefer v. P.F. Chang China Bistro, Inc.*, No. CV-14-185, 2014 WL 3809069 (D. Ariz. Aug. 1, 2014); and *Pellon v. Bus. Representation Int'l, Inc.*, 528 F. Supp. 2d 1306, 1315 (S.D. Fla. 2007), aff'd, 291 F. App'x 310, 311 (11th Cir. 2008) (affirming "on the basis of the district court's well-reasoned order").

In response, Plaintiff opposes Defendant's arguments and points out that notably absent from Defendant's motion is any mention of Judge Richard Gergel's decision in *Irvine v. Destination Wild Dunes Mgmt.*, 106 F. Supp. 3d 729 (D.S.C. 2015). In *Irvine*, Judge Gergel denied a similar Rule 12(b)(6) motion to dismiss, finding that the plaintiff stated an FLSA claim under both the 20 percent rule and the dual occupation rule. *Id.* at 736. In so finding, Judge Gergel rejected the defendants' argument that the 20 percent rule set forth

9

in the Handbook is not entitled to deference because it was not adopted through notice and comment rulemaking. Instead, Judge Gergel determined that the 20 percent rule was entitled to deference pursuant to *Auer v. Robbins*, 519 U.S. 452 (1997), which permits courts to defer to agencies' interpretations of their own regulations unless the interpretation is plainly erroneous or inconsistent with the regulation. *Irvine*, 106 F. Supp. 3d at 733 (citing *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 881 (8th Cir.2011), *cert. denied*, ⸺ U.S. ⸺ (2012), where the Eighth Circuit Court of Appeals gave *Auer* deference to the twenty percent rule). According to Judge Judge Gergel:

> Although the DOL has not adopted and promulgated the 20% rule as a codified regulation, its use of the rule has not been "dizzyingly inconsisten[t]," as Defendants claim. The DOL has had a constant position that 20% is the appropriate guideline for related but non-tipped tasks since at least 1988, when the FOH was updated to include § 30d00(e). Three years before, it had already issued an opinion letter addressing a situation where a server spent 30-40% of their shift in prep work (DOL Opinion Letter, FLSA854, Dec. 20, 1985, explaining that the employer there was not eligible for the tip credit). And in 2009 it reaffirmed the rule in its published FAQ's. See "Fact Sheet # 15: Tipped Employees Under the Fair Labor Standards Act," available at http://www.dol.gov/whd/regs/compliance/whdfsl5.pdf, revised July 2013. The only instance where DOL considered ending reliance on the twenty percent rule was when (under the guidance of an interim administrator) it issued and simultaneously withdrew an opinion letter that would have "superseded" § 30d00(e). Ultimately, this letter, which would have shifted the DOL's position that would rely on the O*NET, discussed further below, was never adopted or relied upon by the DOL.

*Id.* (internal citations omitted). Furthermore, Judge Gergel found that even if the 20 percent rule was not entitled to *Auer* deference, the standard still "would be a perfectly valid interpretation of the FLSA" because "[i]t is clear that the FLSA and its enacting regulations contemplate a distinction between a server who is performing 'occasional' related duties, such as rolling silverware, and a server who is simply being used as cheap, untipped labor." *Id.* at 734. Lastly, Judge Gergel rejected the defendants' argument that the 20 percent rule

10

imposed impractical burdens on employers, stating:

> The problem with this stance is that if an employer considers a certain employee a "tipped employee" and therefore decides to exempt an employee from the minimum wage law, it is an inescapable duty on the part of the employer to ensure that the employee is in fact engaged in a tip-producing "occupation." Whether this assurance is established through tracking the employee's time spent on certain duties, or whether it is established through the Defendants' preferred method of analyzing the duties for compliance with the O*NET list, any evaluation of an employee's status as a tipped employee requires a review of their duties before an employer is legally entitled to reduce wages to $2.13 per hour.

*Id.*

Indeed, Judge Gergel is not alone in his findings. As Plaintiff points out, the greater weight of authority supports giving deference to the 20 percent rule. For example, in *Fast*, the Eighth Circuit Court of Appeals granted *Auer* deference to the DOL's interpretation of the dual jobs regulation contained in the Handbook. 638 F.3d 879, 880 (8th Cir. 2011). The court noted that § 531.56(e) places a temporal limit on the amount of non-tipped work an employee can do and still be considered a tipped occupation, but that the regulation does not define "occasionally" or "part of the time," and, thus, the court found that the Handbook's conclusion that an employee who spends "substantial" time (defined as more than 20 percent) performing related but nontipped duties should be paid at the full minimum wage for that time is a reasonable interpretation of the regulation. *Id.*

Likewise, multiple district courts throughout the country have followed *Fast* and have given deference to the 20 percent rule. For instance, in *Barnhart v. Chesapeake Bay Seafood House Assocs.,* the District of Maryland gave deference to the rule, determining that the plaintiff, who had alleged that she spent between 30 and 50 percent of her work hours performing duties that are not tip-producing, stated a plausible claim for relief under

the FLSA. No. JFM-16-01277, 2017 WL 1196580 (D. Md. March 31, 2017). In addition, in *McLamb v. High 5 Hospitality*, the District of Delaware gave deference to the 20 percent rule. 197 F. Supp. 3d 656 (D. Del. 2016); *see also Flood v. Carlson Rests., Inc.*, 94 F. Supp. 3d 572 (S.D.N.Y. 2015) (collecting district court cases across the country that have endorsed the 20 percent rule); and *Goodson v. OS Restaurant Services,* No. 5:17-CV-10-OC-37PRL, 2017 WL 1957079, at *4 (M.D. Fla. May 11, 2017) ("The *Fast* Court's analysis of the 20% rule has rarely been criticized" and "has been relied on and cited favorably by courts across the country."). These courts generally have dismissed the conflicting cases from the District of Arizona, upon which Defendant relies, as outliers against the weight of authority. *See McLamb*, 197 F. Supp. 3d at 663, and *Barnhart*, 2017 WL 1196580, *6. And often these courts have distinguished the Eleventh Circuit's decision in *Pellon*, upon which Defendant also relies, because it was decided at the summary judgment stage and involved different facts.[2]  *See Irvine*, 106 F. Supp. 3d at 734 ("Defendants' assertion that the Eleventh Circuit rejected the twenty percent rule in [*Pellon*] is an overstatement."); and *Flood*, 94 F. Supp. 3d at 582, n. 7 (rejecting the defendants' assertion that the Eleventh Circuit rejected the 20 percent rule in *Pellon*).

Interestingly, following the filing of the parties' briefs in this case, another district court in the Fourth Circuit determined that the plaintiffs failed to state a claim under the 20

---

[2]  In *Pellon*, the district court found that "a determination whether 20% (or any other amount) of [an employee's] time is spent on non-tipped duties is infeasible," but then concluded that such a determination was unnecessary because the majority of the complained-of duties did not qualify as general maintenance or preparation work. 528 F. Supp. 2d at 1313-14. In affirming, the Eleventh Circuit merely stated: "After thorough review of the record and careful consideration of the parties' briefs and oral argument, we affirm on the basis of the district court's well-reasoned order." 291 F. App'x at 311. This Court tends to agree with Judge Gergel and others that the Eleventh Circuit's statement, when considered in conjunction with the district court's order, does not constitute a blanket rejection of the 20% rule. *See also White v. NIF Corp.*, CV-15-322-WS-N, 2017 WL 210243, at *4 (S.D. Ala. January 18, 2017) (disagreeing with the defendant's argument that *Pellon* rejected the 20% rule).

percent rule. *Chavez v. T&B Mgmt., LLC*, No. 1:16cv1019, 2017 WL 2275013, at *7 (M.D.N.C. May 24, 2017). Specifically, in contrast to the weight of authority outlined above, Judge Thomas D. Schroeder of the Middle District of North Carolina determined that the Handbook and Fact Sheet #15, which both mention the 20 percent rule, are not entitled to *Auer* deference in light of the disclaiming language contained in both documents[3] as well as the DOL's inconsistent interpretations. *Id.* at *7. In *Chavez*, the court noted that only one court–Judge Gergel in *Irvine*–had taken note of the disclaiming language and nevertheless deferred to the 20 percent rule. *Id.* at * (citing *Irvine*, 106 F. Supp. 3d at 732). In contrast to *Irvine*, the court in *Chavez* also determined that *Auer* deference was not warranted because the Handbook and Fact Sheet #15 contain statements that are inconsistent with the DOL's opinion letter of January 16, 2009. *Id.* In so finding, the court cited *Christopher v. SmithKline Beecham Corp.*, where the Supreme Court stated that *Auer* deference is inappropriate when the agency's interpretation is plainly erroneous or inconsistent with the regulation, or where there is reason to suspect that the agency's interpretation does not reflect the agency's fair and considered judgment on the matter."

---

[3] In *Chavez*, the court stated:

> In order to be entitled to deference, the [Handbook] and Fact Sheet #15 must constitute interpretive guidance subject to *Auer*. In other words, the DOL must have intended for the two documents to represent its official interpretation of § 513.56(e). As noted above, the DOL states that the [Handbook] "is not used as a device for establishing interpretative policy." Similarly, Fact Sheet #15 states that it "is for general information and is not to be considered in the same light as official statements of position contained in the regulations." Fact Sheet #15, U.S. Dep't of Labor, at 4, https://www.dol.gov/whd/regs/compliance/whdfs15.pdf (last visited May 24, 2017). These would be strange caveats to add to documents intended to be interpretative guidance. Because the agency eschews such interpretative intent in these two documents, the court finds that the [Handbook] and Fact Sheet #15 are not the DOL's official interpretive guidance on the matter and are not entitled to *Auer* deference.

*Chavez*, 2017 WL 2275013, *6.

122 S. Ct. 2156, 2166 (2012) (internal quotations and citations omitted). Although Judge Schroeder acknowledged that the DOL withdrew the January 16 letter, he nevertheless determined that "the letter's express conflict with the [Handbook] and Fact Sheet #15 reflects the agency's inconsistent thought, leading the court to doubt that the twenty percent rule articulated therein reflects the DOL's considered judgment." *Id.* Ultimately, because the plaintiff's claim in *Chavez* was founded entirely on the 20 percent rule, the court found that the plaintiff failed to state a plausible claim. *Chavez*, 2017 WL 2275013, at *7.

Here, after a thorough review of the relevant law and the facts of this case, the Court first notes that it finds certain of Defendant's arguments compelling, for example, Defendant's argument that it is not appropriate to give deference to the Handbook and Fact Sheet #15 because the Handbook expressly provides that it is not "a device for establishing interpretive policy" and because Fact Sheet #15 expressly provides that it "is for general information and is not to be considered in the same light as official statements." Nevertheless, after consideration, and in light of the greater weight of authority, the Court ultimately agrees with Judge Gergel's reasoning in *Irvine*. As Judge Gergel explained, "[a]lthough the DOL has not adopted and promulgated the 20% rule as a codified regulation, its use of the rule has not been 'dizzyingly inconsistent.'" 106 F. Supp. 3d at 733. In 1985, the DOL indicated that a situation where a server spent 30 to 40 percent of his shift in preparatory work was not eligible for the tip credit, and since the promulgation of the Handbook three years later in 1988, the DOL has held a constant position that 20 percent is the appropriate guideline for related but non-tipped duties. (*See* ECF No. 13-7 at 4, Dep't of Labor, Wage & Hour Div., Op. Letter FLSA-854, 1985 WL 1259240 (Dec. 20,

14

1985); and ECF No. 13-5 at 2, Dep't of Labor, Wage & Hour Div. Handbook § 30d00(e) (Dec. 9, 1988).) Moreover, the Court does not believe it is appropriate to rely on the DOL's letter from January 16, 2009, as evidence of the DOL's inconsistent thought on the issue, as the DOL never adopted or relied on this letter and expressly withdrew it. *See Irvine*, 106 F. Supp. 3d at 733 ("The only instance where DOL considered ending reliance on the twenty percent rule was when (under the guise of an interim administrator) it issued and simultaneously withdrew an opinion letter that would have 'superseded' § 30d00(e)."). In addition, the Court agrees with Judge Gergel that even "aside from any deference due to the agency's use of the twenty percent rule, such a standard would be a perfectly valid interpretation of the FLSA and § 531.56(e), even if Plaintiff presented it as a completely novel theory for the Court's consideration." *Irvine*, 106 F. Supp. 3d at 734 (citing *Christopher*, 132 S.Ct. at 2169) (explaining that where an agency's position is due no deference, its interpretation of a regulation will be considered based upon the validity of its reasoning and "all those factors which give it power to persuade")). Because the FLSA and its enacting regulations clearly contemplate a distinction between a server who is occasionally performing work incidental to her regular duties and a server who spends a substantial amount of time performing work incidental to her regular duties, and because Plaintiff alleges that Defendant required her to spend "approximately 4 hours or more" of her shifts "that lasted between approximately 10 to 12 hours"–or 33 to 40 percent of her time–performing non-tip producing work incidental to her duties, the Court finds that, taking the facts in the light most favorable to Plaintiff, Plaintiff has stated a facially plausible claim

for violation of the FLSA's minimum wage requirements.[4]

### B. Plaintiff's Overtime Wage Claim

In its motion to dismiss, Defendant also requests that the Court dismiss Plaintiff's overtime wage claim because Plaintiff's complaint lacks sufficient factual allegations and fails to state a plausible claim.  As Defendant points out, Plaintiff alleges no facts in support of her claim and simply alleges "Defendant violated the FLSA's overtime pay mandates by failing to pay Plaintiff and other Servers the full minimum wage."  (ECF No. 5 ¶ 28.)

In response to Defendant's motion, Plaintiff agrees that her complaint fails to state an overtime wage claim under the relevant law, but she "requests the opportunity to file an amendment to address her FLSA claims concerning unpaid overtime pay."  (*Id.*)

Although Plaintiff requests the opportunity to file an amendment, she has not filed a motion to amend or otherwise supplied the Court with any proposed amended complaint such that the Court can determine, at this time, whether to permit the amendment and allow Plaintiff to proceed with an overtime wage claim.  As such, the Court grants Defendant's motion to dismiss this claim.  Nevertheless, in the interest of fairness, the Court does so without prejudice to Plaintiff's right to file a motion to amend.

### **CONCLUSION**

For the foregoing reasons, the Court denies in part and grants in part Defendant's motion to dismiss (ECF No. 13.)  Specifically, the Court denies Defendant's motion to dismiss as to Plaintiff's minimum wage claim and grants Defendant's motion to dismiss as

---

[4] As Judge Gergel remarked in *Irvine*, this ruling does not prejudice Defendant from "arguing in further proceedings that the twenty percent rule is unreasonable, erroneous, or inappropriate for the facts of this case."  106 F. Supp. 3d at 736.

to Plaintiff's overtime wage claim; however, the Court dismisses Plaintiff's overtime wage claim without prejudice.

**IT IS SO ORDERED.**

                                                  s/Bruce Howe Hendricks
                                                  The Honorable Bruce H. Hendricks
                                                  United States District Judge

August 8, 2017
Charleston, South Carolina